## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON

**WILLIE L. HARRIS,**

       **Plaintiff,**

**v.**                                       **Case No. 2:13-cv-10803**

**TERRY KINDER and**
**TIMOTHY PERKINS,**

       **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are the defendants' Motion to Dismiss for Plaintiff's Failure to Participate in Discovery (ECF No. 53) and the defendants' Motion for Summary Judgment (ECF No. 55). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### RELEVANT PROCEDURAL HISTORY

On May 9, 2013, the plaintiff, who was then incarcerated at the Mount Olive Correctional Complex ("MOCC"), in Mount Olive, West Virginia, filed a Complaint under 42 U.S.C. § 1983 (ECF No. 2), alleging that two John Doe Correctional Officers subjected the plaintiff to verbal harassment and retaliation, sprayed pepper spray or mace into his cell, and shut his arm in the food slot of his cell, resulting in an injury to his arm, and then denied him medical care. The plaintiff also alleged claim of

supervisory liability and denial of due process against David Ballard, the Warden at MOCC, and Charles Legg, a Lieutenant with supervisory responsibilities on the plaintiff's unit.[1]  (*Id.*)

The plaintiff was released on parole in July of 2013; however, for a brief period of time, he was housed at the Western Regional Jail ("WRJ"), while suitable housing was found for him.  On August 6, 2013, while the plaintiff was at the WRJ, a status conference was held in this matter.  (ECF No. 21).  The plaintiff participated by video conference.  (*Id.*)  During the hearing and in the Order entered thereafter, the plaintiff was advised that he must keep the court and defense counsel informed of any changes to his contact information, so that the court and defense counsel could correspond with the plaintiff and serve him with documents related to this case, since he does not have access to the court's Court Management and Electronic Case Filing (CM/ECF) program. The plaintiff's Motions for Appointment of Counsel (ECF No. 5 and 18) were denied, but the plaintiff was encouraged to seek counsel on his own when he was released from the WRJ.

Upon order of the court, the defendants produced documentation to the plaintiff which enabled him to identify the two John Doe defendants as Terry Kinder and Timothy Perkins.  A status and scheduling conference was held on October 16, 2013, which the plaintiff and defense counsel attended in person.  The plaintiff was subsequently permitted to amend his Complaint to name these two new defendants and they were served with process.  (ECF No. 28).  The Amended Complaint is docketed as ECF No. 30.

---

[1]  As discussed *infra*, the claims against Ballard and Legg have been dismissed.

On December 10, 2013, the presiding District Judge adopted the undersigned's Proposed Findings and Recommendation (ECF No. 29) and dismissed as moot the plaintiff's claims for declaratory and injunctive relief, due to the plaintiff's release from MOCC.  (ECF No. 38).

On January 7, 2014, the plaintiff contacted the undersigned's chambers and advised the court of a change of address, which was noted on the docket sheet.

On April 7, 2014, the undersigned filed a second Proposed Findings and Recommendation ("PF&R") (ECF No. 43), recommending that the plaintiff's claims against defendants Ballard and Legg be dismissed for failure to state a claim upon which relief can be granted.  The plaintiff did not file objections to the PF&R and the presiding District Judge adopted the same and dismissed the claims against Ballard and Legg on July 18, 2014.  (ECF No. 49).

Also on April 7, 2014, the undersigned entered a Time Frame Order for additional proceedings concerning the plaintiff's claims against defendants Kinder and Perkins. (ECF No. 44).   The Order set a deadline of August 15, 2014 for discovery, with dispositive motions to be filed by September 15, 2014.  (*Id.*)  Pursuant to the holding of the United States Court of Appeals for the Fourth Circuit in *Roseboro v.* Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was notified of his right and obligation to respond to any motion for summary judgment filed by the defendants, and of the types of evidence he could use to oppose such a motion.  (*Id.*)  Response and reply deadlines were also included in the Order.  (*Id.*)

On May 7, 2014, defendants Kinder and Perkins served their First Set of Interrogatories, Requests for Admissions, and Requests for Production of Documents to the Plaintiff.  (ECF No. 45)  Those discovery requests were mailed to the plaintiff at a

halfway house where he was living when he was first released from the WRJ, which was not the updated address that the plaintiff had provided to the court on January 7, 2014, which was a Post Office box number in Beckley, West Virginia.  On May 22, 2014, the defendants apparently re-mailed the same discovery requests to the plaintiff at the Post Office box number.  However, the Certificate of Service detailing the re-mailing was not filed by the defendants until July 8, 2014.  (ECF No. 45).

Pursuant to Rules 33, 34 and 36 of the Federal Rules of Civil Procedure, the plaintiff's responses to the discovery requests were due within 30 days of service of the requests, or by June 22, 2014.  On or about June 5, 2014, the plaintiff contacted the undersigned's staff and stated that he was having trouble understanding how to respond to the defendants' discovery requests, and requested assistance from the court, possibly in the form of a telephonic hearing with the court and defense counsel, to facilitate the process of exchanging discovery information in a less formal manner.  At the time that the undersigned's staff returned the plaintiff's telephone call, the plaintiff did not have the discovery requests available, and he was advised to call back to the court's chambers, so that he could identify the discovery requests he was having trouble answering. However, to the undersigned's knowledge, the plaintiff did not leave a message with the court's staff again until on or about October 9, 2014.

In the meantime, the plaintiff did not respond to any of the discovery requests, including the Requests for Admissions.  Thus, on July 10, 2014, the defendants filed a Motion to Deem Requests for Admissions Admitted (ECF No. 47) with a Memorandum of Law in support thereof (ECF No. 48).  Then, on July 24, 2014, the defendants filed a Motion to Compel Plaintiff's Responses to Interrogatories and Requests for Production

of Documents (ECF No. 51), with a Memorandum of Law in support thereof (ECF No. 52).  The plaintiff failed to respond to either of these motions.

Furthermore, a Notice of Deposition was filed on July 23, 2014, which scheduled the plaintiff's deposition on August 4, 4014 at 10:00 a.m. at defense counsel's office. (ECF No. 50).  As addressed in the defendants' Memorandum of Law in support of their Motion to Dismiss for Plaintiff's Failure to Participate in Discovery (ECF No. 54 at 3), the plaintiff failed to appear for his deposition and did not contact defense counsel to reschedule it.

The discovery deadline expired on August 15, 2014, and on September 15, 2014, the defendants filed a Motion for Summary Judgment (ECF No. 55) and a Memorandum of Law in support thereof (ECF No. 56).  As noted above, the plaintiff attempted to contact the undersigned's chambers on or about October 9, 2014.  He left a message with a phone number where he could be reached.  However, when the undersigned's staff attempted to return the phone call, a recorded message indicated that the number had been changed, disconnected or was no longer in service.  Thus, on October 20, 2014, the undersigned entered an Order directing the plaintiff to contact the undersigned's chambers to provide a working telephone number where he could be reached in order to participate in a telephonic status conference.  (ECF No. 57).  The Order was mailed by certified mail, return receipt requested, to the plaintiff at P.O. Box. 5374, Beckley, WV 25801, which is the last address provided to the court by the plaintiff. However, on November 14, 2014, the mail was returned as undeliverable/unclaimed. (ECF No. 59).

## ANALYSIS

### A.     The defendants' Motion for Summary Judgment.

On September 15, 2014, the defendants filed a Motion for Summary Judgment (ECF No. 55) asserting that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on all of the plaintiff's remaining claims. Because the plaintiff failed to participate in any form of discovery in this matter, the court has deemed the Requests for Admissions made by the defendants to the plaintiff to be admitted.  These admissions, the Affidavits of defendant Timothy Perkins and Corporal Richard Toney, and the accompanying Incident Reports, are the only evidence of record.  The undersigned will first summarize the undisputed evidence and will then turn to the legal standards applicable to the plaintiff's claims.

In evaluating summary judgment motions, Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a) (2010).  Material facts are those necessary to establish the elements of a party's cause of action.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant.  *Id*.  The moving party has the burden of establishing that there is an absence of evidence to support the nonmoving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Even if

6

there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

> Rule 56(c)(1) of the Federal Rules of Civil Procedure provides that:
>
> A party asserting that a fact cannot be or is genuinely disputed, must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Subsection (e) of Rule 56 provides that, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may:  (1) give the parties an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and undisputed supporting materials show that the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

A court must not resolve disputed facts, weigh the evidence, or make determinations of credibility.  *See Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986); *Russell v. Microdyne Corp.*, 65 F.3d 1229, 1239 (4th Cir. 1995).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing

the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  However, the party opposing the motion may not rely upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Sprenkle v. Hartford Life Ins. Co.*, 84 F. Supp. 2d 751 (N.D. W. Va. 2000).

The plaintiff's Amended Complaint alleges that, on February 26, 2013, the plaintiff was housed in a segregation cell on the Qulliams Two unit at MOCC, where several inmates were flooding their cells.  (ECF No. 30 at 3, ¶ 7).  The plaintiff alleges that he was looking out of his cell, listening to the other inmates who were yelling and making derogatory comments to the commanding officers, ordering them to clean up the water.  (*Id.*, ¶ 8).  The plaintiff denies that he was one of the inmates engaged in this conduct.  (*Id.*, ¶ 9).  The plaintiff further alleges that a correctional officer looked up and saw the plaintiff looking out his window, and "must have thought [it] was me that was doing the yelling."  (*Id.*)

The plaintiff's Amended Complaint further alleges that, later that night, Correctional Officers Terry Kinder and Timothy Perkins came to his cell, where he was laying down, and opened the "bean hole" and sprayed pepper spray or mace through the slot and then closed it.  (*Id.*, ¶¶ 10, 11).  The plaintiff further alleges that the chemicals were burning his face and eyes, so he got up and put water on his face, while Kinder and Perkins stood outside his door laughing.  (*Id.*)  The plaintiff further alleges that he told Kinder and Perkins that he was going to file a grievance and said, "We'll see who gets the last laugh."  (*Id.*, ¶ 12).  The plaintiff further alleges that Kinder and Perkins left and returned with a grievance form.  (*Id.*, ¶ 13).

The plaintiff further alleges that, when they opened the "bean hole," the officers said "spell my name right" and then held the grievance form a few inches outside the

slot, so that the plaintiff had to reach out to get the form.  (*Id.*, ¶ 14).  The plaintiff alleges that, when he stuck his hand out to get the form, Kinder and Perkins closed the "bean hole" door on the plaintiff's arm with force, and said, "who's the pu--y now, motherfu--er?"  The plaintiff further alleges that, as the plaintiff tried to pull his arm back into his cell, he tore some flesh off of his arm, causing it to bleed.  (*Id.*, ¶ 15).  Despite showing Kinder and Perkins that his arm was bleeding, they did nothing, and said "you are lucky it's not worse."  (*Id.*, ¶ 16).  The plaintiff further alleges that Kinder and Perkins added, "when you file your grievance, who are they going to believe?  You or us?  We're the ones that are wearing the badge."  (*Id.*)  The plaintiff further alleges that Kinder and Perkins walked away and did not report the plaintiff's injury to the medical staff or render assistance in any way.  (*Id.*, ¶ 17).  The plaintiff alleges that the injury left a "huge hole in my wrist."  (*Id.*)

The plaintiff's Amended Complaint further alleges that, several days later, a "CERT team" was doing cell searches and noticed the injury on his arm and took pictures.  (*Id.*, ¶ 18).  The plaintiff further alleges that, after the pictures were taken, he asked to go to the medical unit, but was not permitted to do so.  (*Id.*, ¶ 19).  The plaintiff alleges that a pill nurse came to his cell and told the plaintiff that he "would be okay" and that she was not going to file a report on his medical condition.  *Id.*  The plaintiff further alleges that a few days later, another pill nurse gave him some antibiotic cream and a bandage.  *Id.*  The plaintiff claims that he has lost feeling in his hand and arm.  *Id.*

As noted previously herein, the plaintiff did not respond to any of the defendants' discovery requests, including a set of Requests for Admissions.  Accordingly, the Requests for Admissions have been deemed admitted.  The following facts and legal conclusions are considered to be admitted and undisputed by the plaintiff:

1.    Terry Kinder and Timothy Perkins did not come to the plaintiff's cell on February 26, 2013 and spray pepper spray in the "bean hole" and then close it.

2.    Terry Kinder and Timothy Perkins did not come to the plaintiff's cell on February 26, 2013 and cause the plaintiff to reach through the "bean hole" to obtain a grievance form, and then shut the "bean hole" door on the plaintiff's arm, causing injury.

3.    The injury the plaintiff complained of to a "pill nurse" and CERT Team was not caused by Terry Kinder or Timothy Perkins.

4.    The plaintiff never reported to any medical personnel or DOC personnel that he was injured by Terry Kinder or Timothy Perkins.

5.    The plaintiff was not physically injured by Terry Kinder or Timothy Perkins.

6.    None of the defendants used excessive force against the plaintiff.

7.    None of the defendants denied the plaintiff medical care.

8.    None of the defendants engaged in an assault and battery of the plaintiff.

9.    None of the defendants were negligent in any respect with regard to the plaintiff.

10.    On February 28, 2013, at approximately 14:40 hours, the plaintiff told an employee of the Mount Olive Correctional Complex that he had scratched his arm on the bean hole the day before.

11.    At 14:55 hours on February 28, 2013, the plaintiff was given medical care to his arm.

12.    When the plaintiff received medical care to his arm on February 28, 2013, he made no mention of an alleged intentional injury to his arm.

13.    None of the defendants was deliberately indifferent to the plaintiff with regard to the alleged events.

14.    No defendant denied the plaintiff due process of law.

15.    On February 26, 2013, during pill pass, the plaintiff came to the bean hole with what appeared to be human excrement covering his

hands and told employees of Mount Olive Correctional Complex
that he planned to eat his own waste.

(ECF No. 56 at 8-9).

In addition to these admissions by the plaintiff, defendant Timothy Perkins has submitted an Affidavit denying the plaintiff's allegations, which has not been disputed by the plaintiff.  The Affidavit states, in pertinent part, as follows:

> 3.   On February 26, 2013, I was working the night shift, which was from 7:00 p.m. to 7:00 a.m.  I worked a shift from 7:00 p.m. on February 25, [2013][2], until 7:00 a.m. on February 26, [2013].  I worked a shift from 7:00 p.m. on February 26, [2013], until 7:00 a.m. on February 27, [2013].  I was assigned to the post of Quilliams Two Segregation Unit for both of those shifts on February 26, [2013].

> 4.   At no time, on February 26, 2013, or otherwise, have I ever sprayed pepper spray into inmate Willie Harris' cell.  There has never been an occasion when I have been present while another officer sprayed pepper spray into inmate Willie Harris' cell, either on February 26, 2013, or any other time, as alleged in paragraph 10 of Willie Harris' Amended Complaint.

> 5.   At no time, on February 26, 2013, or otherwise, have I ever stood outside of inmate Willie Harris' cell laughing while chemical agent was burning his face, as alleged in paragraph 11 of Willie Harris' Amended Complaint.  I have no knowledge of any other officer having done so.

> 6.   I have no knowledge of any incident, as alleged in paragraph 13 of Willie Harris' Amended Complaint, where I or any other officer, provided a grievance form to inmate Willie Harris and told him to "spell my name right."

> 7.   At no time, on February 26, 2013, or otherwise, have I ever closed the bean hole with force on inmate Willie Harris' arm.  There has never been an occasion when I have been present while another officer closed the bean hole with force on inmate Willie Harris' arm, either on February 26, 2013, or any other time, as alleged in paragraph 14 of Willie Harris' Amended Complaint.

---

[2]   Paragraph 3 of Defendant Kinder's Affidavit lists the dates as February 25 and 26, 2014.  The undersigned believes this to be a typographical error, as the remainder of the Affidavit lists the operative date as February 26, 2013, which matches the date in the plaintiff's Amended Complaint.  The undersigned has corrected the dates in parentheticals herein.

8.      I have never been involved in an incident, as alleged in paragraph 14 of Willie Harris' Amended Complaint, where I or any other officer closed inmate Willie Harris' arm in the bean hole and then said, "who's the pussy now, motherfucker?"

9.      There has never been an occasion, on February 26, 2013, or otherwise, when Willie Harris showed me or another officer in my presence that his arm was bleeding, and we refused to get medical treatment as alleged in paragraphs 16 and 17 of Willie Harris' Amended Complaint.

10.     There has never been an occasion, on February 26, 2013, or otherwise, when Willie Harris showed me or another officer in my presence that his arm was bleeding and we stated, "you are lucky it's not worse" as alleged in paragraph 16 of Willie Harris' Amended Complaint.

11.     I did not say to Willie Harris, on February 26, 2013, "when you file your grievance, who are they going to believe, you or us?  We are the ones that are wearing the badge" as alleged in paragraph 16 of his Amended Complaint.  I have no knowledge of any other officer making such statement in connection with Willie Harris intending to file a grievance regarding an injury received on or about that date.

(ECF No. 55, Ex. 1 at 2-4).

The defendants have also submitted the Affidavit of Richard Toney, another Correctional Officer at the Mount Olive Correctional Complex.  Toney's Affidavit states:

2.      On February 28, 2013, I was working my assigned post as a member of the Special Operations team at the Mount Olive Correctional Complex.  I was working day shift.

3.      At approximately 1440 hours, or 2:40 p.m., I was assisting officers in the Quilliams Two Segregation Unit with recreation.  At that time, inmate Willie Harris, who was in cell 809, called me over to his cell to complain about a lack of personal items.  Correctional Officer Two Ronnie Lanham, who was also in the Quilliams Two unit assisting with recreation, noticed an open sore on inmate Harris' lower left arm and it was brought to my attention.  I asked inmate Harris about the sore, and he told me that he had scratched it on the bean hole the day before.  The "bean hole" refers to the food slot in the door of the cell.  I understood Mr. Harris to mean that he had scratched his arm himself.  I do not recall any statements being made by Mr. Harris indicating that the sore on his

arm had been caused by the actions of any correctional officer or officers.

4.      Nurse Eve Tucker was conducting pill pass in the Quilliams Two Segregation Unit at that time.  I asked her if she would look at Mr. Harris' left arm.  She stated that, without a doctor's order, there was nothing she could do.  I contacted Physician Assistant Sandra May, who told me that she would get an order written and that she would send Nurse Tucker back with bandages and antibiotic cream.

5.      At approximately 1455, or 2:55 p.m., Nurse Tucker returned to the Quilliams Two Segregation Unit and issued the prescribed items to inmate Harris.  I was present when she provided this medical treatment to Mr. Harris and observed it.

6.      I took photographs of inmate Harris' arm, prepared an Incident Report, and attached the photographs to my Incident Report.  I then submitted the Incident Report to the Shift Commander.

(ECF No. 55, Ex. 4).  Corporal Toney's Incident Report, which is attached to the

defendants' Motion for Summary Judgment as Exhibit 3, confirms these details.  (ECF

No. 55, Ex. 3).  The defendants have also attached an Incident Report dated February

26, 2013, filed by Sergeant Jeffrey Hilewitz, which states as follows:

On Tuesday, February 26, 2013, I Sergeant Jeffrey Hilewitz was working my assigned post as Segregation Technician at the Mount Olive Correctional Complex.  At approximately 1515 hours Correctional Officer II Scott Parsons and Correctional Officer II Aaron Sargent reported: During pill pass, inmate Willie Harris # 52034, who's [sic; whose] current residence is cell 809, came to the bean hole with what appeared to be human excrement covering his hands.  I immediately went to pod 8 with COII Sargent to speak to I/M Harris.  Upon arrival at cell 809, I/M Harris came to the door and stated that he was entertaining himself by covering his hands with his own waste, and that he planned to eat his waste for dinner.  After approx. 5 minutes of talking with Harris, he agreed to wash his hands.  At approx. 1230 hrs today, mental health staff, Shanna Coleman and Lisa Conner spoke with I/M Harris at length.  During that conversation, I/M Harris stated that he wasn't feeling like hurting himself right then, but he wasn't sure what he was going to do in the future.  Ms. Conner and Ms. Coleman both told I/M Harris that he was trying to manipulate staff into getting what he wanted.  End of Report.

(ECF No. 5, Ex. 2).  There are no other reports of incidents involving the plaintiff on or about February 26, 2013, and none involving the plaintiff and the defendants herein.

Despite being advised, pursuant to the holding in *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his rights and obligation to file a response to any Motion for Summary Judgment filed by the defendants, the plaintiff did not respond in any way to the defendants' Motion for Summary Judgment.  Thus, the evidence presented by the defendants is undisputed.

The plaintiff's Amended Complaint alleges that defendants Kinder and Perkins violated his rights under the Eighth Amendment to the United States Constitution.  In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  This is a low standard.  The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'"  *Id.* at 833.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury.  The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  503 U.S. at 6.  The majority opinion noted that "[t]he objective component of an Eighth

14

Amendment claim is therefore contextual and responsive to 'contemporary standards of decency.'" 503 U.S. at 8. [Citation omitted.]

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. [Citation omitted.] This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. * * *

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [Citation omitted.] The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." [Citations omitted.]

*Id.* at 9-10. Near the conclusion of the opinion, Justice O'Connor wrote: "To deny, as the dissent does, the difference between punching a prisoner in the face and serving him unappetizing food is to ignore the 'concepts of dignity, civilized standards, humanity and decency' that animate the Eighth Amendment." *Id.*, at 11.

The Supreme Court, however, rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. Thus, to sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate

health or safety." *Id.* at 834. (Citations omitted.)   The negligent failure to protect inmates from violence will not suffice. *Pressly*, 816 F.2d at 979.

The *Whitley* case, *supra*, involved a riot at the Oregon State Penitentiary where a prison officer was taken hostage.  In an attempt to free the hostage, a plan was put in place for an unarmed prison security manager to enter the cell block where the hostage was being held, followed by prison officers armed with shotguns.  The security manager ordered one of the armed officers to fire a warning shot and to shoot low at any inmates found climbing the stairs in the direction of the security manager.  During this rescue attempt, one of the officers shot an inmate in the left knee.  The inmate filed suit in federal court, and at the conclusion of a jury trial, the District Court directed a verdict for the defendants.   The Court of Appeals subsequently reversed that ruling and remanded the case to the District Court for a new trial.  The Supreme Court granted certiorari, and ultimately found no Eighth Amendment violation.

The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320.   The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547).   Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support

16

a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

In *Whitley*, the Court set forth the following five factors that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm:  (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996).  (ECF No. 104 at 13).  The defendants' Memorandum of Law discusses the *Whitley* factors.

The defendants' Memorandum further states:

> In this matter, the facts bearing upon whether force was applied by Kinder or Perkins is, at this stage of the case, undisputed.  While Plaintiff alleged in his Amended Complaint that Kinder and Perkins sprayed a chemical agent into his cell and shut his arm in the "bean hole," no evidence has been proffered by the Plaintiff in discovery in support of these allegations.  On the other hand, the Defendants are submitting the Affidavit of Timothy Perkins denying the Plaintiff's allegations, as well as the Affidavit of Cpl. Richard Toney, demonstrating that the Plaintiff admitted to Cpl. Toney that the Plaintiff caused the injury to his arm himself.  Because no force was used by Kinder and Perkins towards the Plaintiff as described in his Amended Complaint, there was necessarily no force applied which was malicious or sadistic as described in *Whitley*.

> Likewise, there is no evidence of civil assault or battery having been committed by Kinder or Perkins.  Plaintiff's claims of civil assault and battery are state law claims.  *McLenagan v. Karnes*, 27 F.3d 1002, 1008-09 (4th Cir. 1994).  "In order to be liable for a battery, an actor must act with the intention of causing harmful or offensive contact with a person." Syl. Pt. 8, *West Virginia Fire & Casualty Co. v. Stanley*, 216 W. Va. 40, 602 S.E.2d 483 (2004), *quoting* Syl. Pt. 1, *Funeral Servs. By Gregory v. Bluefield Hosp.* 186 W. Va. 424, 413 S.E.2d 79 (1991), *overruled on other grounds by Courtney v. Courtney*, 190 W. Va. 126, 437 S.E.2d 436 (1993). In discussing the elements of civil assault, the Supreme Court of Appeals

17

of West Virginia approved the definition contained in the Restatement (Second) of Torts § 21 (1965), agreeing that:

> (1) An actor is subject to liability to another for assault if
>
> (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
>
> (b) the other is thereby put in such imminent apprehension.

*West Virginia Fire & Casualty Co. v. Stanley*, 216 W. Va. 40, 52, 602 S.E.2d 483, 495 (2004), *quoting* Restatement (Second) of Torts § 21 (1965). Beyond mere allegations in the pleadings, there is no evidence in the record to support Plaintiff's claim that either Kinder or Perkins engaged in any action that could support a claim for civil assault or civil battery. On the other hand, the allegations have been denied by Defendant Perkins in his Affidavit.

(ECF No. 56 at 12-13).

The plaintiff has not responded in any way to the defendants' Motion for Summary Judgment, despite being advised of his obligation to do so. The defendants' Reply (ECF No. 58), filed on October 29, 2014, re-asserts their position that there is no genuine issue of material fact and that they have demonstrated that they are entitled to judgment as a matter of law on all of the plaintiff's claims.

The undersigned agrees that, under the current posture of this case, there is no genuine issue of material fact concerning any of the plaintiff's claims. Furthermore, the defendants have presented undisputed evidence that neither Terry Kinder, nor Timothy Perkins, engaged in any conduct involving the plaintiff on or about February 26, 2013, which would demonstrate a violation of the Eighth Amendment of the United States Constitution, or support a state law civil claim of assault or battery. Additionally, although not directly addressed by the defendants in their briefs, to the extent that the plaintiff has alleged that the defendants engaged in verbal abuse and harassment or

retaliation, verbal harassment, standing alone, does not state an actionable constitutional claim under Section 1983.  *See, e.g., Morrison v. Martin,* 755 F. Supp. 683, 687 (E.D.N.C. 1990)*; Emmons v. McLaughlin,* 874 F.2d 351, 354 (6th Cir. 1989)*; Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985)*; Keyes v. City of Albany,* 594 F. Supp. 1147, 1155 (N.D.N.Y. 1984)*; Lamar v. Steele,* 698 F.2d 1286 (5th Cir. 1983)*; Collins v. Cundy,* 603 F.2d 825, 828 (10th Cir. 1979)*; Fisher v. Woodson,* 373 F. Supp. 970, 973 (E.D. Va. 1973).  Moreover, the plaintiff has not demonstrated any actual evidence of harassment or retaliation against him by defendants Kinder and Perkins. The plaintiff has presented nothing more than the unsupported allegations contained in his Amended Complaint; thus, he cannot refute the evidence and argument offered by the defendants.

For these reasons, the undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and that Terry Kinder and Timothy Perkins are entitled to judgment as a matter of law on all of the plaintiff's remaining claims.  Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** these defendants' Motion for Summary Judgment (ECF No. 55) and dismiss this matter from the docket of the court.

## B.   The defendants' Motion to Dismiss for Failure to Participate in Discovery.

In the alternative, the undersigned proposes that the presiding District Judge **GRANT** the defendants' Motion to Dismiss for Plaintiff's Failure to Participate in Discovery (ECF No. 53).  The plaintiff entirely failed to respond to the defendants' written discovery requests and failed to attend his deposition.

According to the defendants' motion, when the plaintiff did not respond to the written discovery requests, on July 8, 2014, defense counsel attempted to contact him in writing at the address he provided to the court, to advise the plaintiff of the lateness of his responses and to confer in good faith to resolve any potential discovery dispute. (ECF No. 54 at 2). The July 8, 2014 correspondence also requested that the plaintiff contact defense counsel's office to schedule his deposition. (*Id.*) The plaintiff did not respond to the letter and still has not answered any of the discovery requests.

As noted above, when the plaintiff failed to file responses to the discovery requests, the defendants filed motions to deem the requests for admissions admitted and to compel responses to the interrogatories and requests for production of documents. The plaintiff failed to respond to these motions and, to date, has taken no other action in this matter. As noted above, the plaintiff's failure to participate in the discovery process also includes his failure to appear at his scheduled deposition on August 4, 2010, after proper notice was mailed to him on July 23, 2014, at the last address he provided to the court. He further failed to contact defense counsel to reschedule the same. The defendants' motion asserts as follows:

> Due to the Plaintiff's failure to cooperate and participate in the discovery process, the Defendants have been unfairly prejudiced and effectively stalled in their ability to conduct discovery regarding the Plaintiff's claims against them in this matter. Despite their diligence and good faith efforts, the Defendants have been unfairly prejudiced in their ability to meet this Court's deadlines and to prepare a defense. Furthermore, the Defendants have incurred expenses related to the filing of several discovery motions made necessary by Plaintiff's lack of participation in the discovery process and in paying the court reporter to appear for the deposition which did not take place.

(ECF No. 54 at 3).

As noted in the defendants' Memorandum of Law, Rules 37(d)(1)(A)(i) and (ii), (d)(3) and (b)(2)(A)(v) authorize the court to dismiss this action in its entirety as a sanction for the plaintiff's failure to participate in the discovery process. The defendants also cite the United States Court of Appeals for the Fourth Circuit's decision in *Bd. Of Trustees, Sheet Metal Workers Nat. Pension Fund v. Kelly*, 974 F.2d 1330 (4th Cir. 1992) (unpublished), in which the court affirmed the district court's entry of judgment against a party who failed to appear for his deposition.

In *Mutual Fed. Sav. and Loan Ass'n v. Richards & Assoc., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989), the Fourth Circuit emphasized that district courts should apply a four-part test when determining appropriate sanctions under Rule 37(b). The four factors the court must consider are:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary . . . .; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Id., citing Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977). The defendants' Memorandum of Law asserts that dismissal of this action is appropriate because the plaintiff's noncompliance and failure to engage in the discovery process has left them without means to conduct meaningful discovery as to the specifics of the plaintiff's claims and to properly defend against this action. (ECF No. 54 at 4).

The undersigned proposes that the presiding District Judge **FIND** that the plaintiff has wholly failed to participate in the discovery process and that this matter should be dismissed as a sanction for his dilatory conduct. Accordingly, should the presiding District Judge determine that summary judgment is not appropriate, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the

21

defendants' Motion to Dismiss for Plaintiff's Failure to Participate in Discovery (ECF No. 53).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to the opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff by certified mail, return receipt requested, and to transmit a copy to counsel of record.

December 16, 2014

Dwane L. Tinsley
United States Magistrate Judge

22